UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
         - v. -                                              :    S2 15 Cr. 765 (PAC)
                                                             :
EFRAIN ANTONIO CAMPO FLORES and                              :
FRANQUI FRANCISCO FLORES DE FREITAS,                         :
                                                             :
              Defendants.                                    :
                                                             :
-------------------------------------------------------------X

### DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE INFORMANT TESTIMONY ON THE IDENTITY OF A WHITE POWDERY SUBSTANCE

Pursuant to the Federal Rules of Evidence, including Rules 401, 402, and 702, and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993), Defendants Efrain Antonio Campo Flores and Franqui Francisco Flores de Freitas (the "Defendants") respectfully move this Court to exclude certain testimony of the informants identified as CS-1 and CS-2 from the trial in this action.

### ARGUMENT

#### A.    Applicable Law

Rule 702 of the Federal Rules of Evidence "requires the district court to ensure that expert testimony is reliable."   *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571, 574 (S.D.N.Y. 2007).   The Rule codifies the holdings of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and subsequent decisions.   *See, e.g.*, *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 486–88 (S.D.N.Y. 2002) ("The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which has been amended to codify the holdings of *Daubert v.*

1

*Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its

progeny.").

Under Rule 702, the proponent of expert testimony bears the burden of satisfying each

step of a three-part inquiry.  *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 349

(S.D.N.Y. 2005).  *First*, the proponent must show that the witness is qualified as an expert to

testify as to a particular matter.  *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005).

*Second*, the proponent must show that "an expert's reasoning or methodology is reliable."

*Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000).  "To warrant

admissibility . . . it is critical that an expert's analysis be reliable at every step."  *Amorgianos v.

Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  "[W]hen an expert opinion is

based on data, a methodology, or studies that are simply inadequate to support the conclusions

reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."

*Berk*, 380 F. Supp. 2d at 355 (quoting *Amorgianos*, 303 F.3d at 266).

*Third*, expert testimony—like all trial testimony—must be relevant.  *Colon ex rel. Molina

v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 73 (S.D.N.Y. 2001); *see also Amorgianos*, 303 F.3d at 265

("In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in

analyzing whether proffered expert testimony is relevant.").  Thus, the proponent of the

testimony must show that the expert's conclusions "will aid [the jury] in answering the questions

at issue in the case."  *Berk*, 380 F. Supp. 2d at 350.  "[I]n assessing the admissibility of expert

opinion, the Court must weigh its probative value against the danger of unfair prejudice,

confusion of the issues, misleading the jury, or waste of time."  *Nook v. Long Island R.R. Co.*,

190 F. Supp. 2d 639, 643 (S.D.N.Y. 2002) (citing Fed. R. Evid. 403).

**B.     The Expected Testimony of the Informants Regarding the Purported Identification of the White Powdery Substance Is Inadmissible**

The Defendants do not dispute that, in appropriate circumstances, lay testimony can be appropriate evidence to identify a substance as cocaine.  The paradigmatic situation where such lay testimony is appropriate occurs when a user familiar with the effect of the drug ingests the cocaine and experiences the chemical effect associated with the substance.  *See, e.g.*, *United States v. Scott*, 725 F.2d 43, 46 (4th Cir. 1984) (affirming admission of lay testimony where several experienced cocaine users had ingested the drugs in question and confirmed that it was cocaine).  That is not the situation presented by the instant case.  As the Court is aware, both CS-1 and CS-2, the only Government operatives who observed the alleged cocaine sample in this case, testified that they did not ingest the substance.  (*E.g.,* Tr. 427:21–24 (CS-1))[1] ("Q.  It's your testimony that you didn't snort any of that cocaine, right? A.  No, sir.  In other words, I didn't inhale it.  I just smelled it, I saw it, and I touched it."); (s*ee also* Tr. 363:20–364:10 (CS-2)).  Later in his testimony, CS-1 described the supposed "test" he conducted to determine that the powdery substance in question was cocaine:

> 6   Q.  You don't remember during a meeting that you had with the
> 7   DEA saying that it's impossible to determine the percentage of
> 8   cocaine, the purity percentage of cocaine, without performing a
> 9   chemical test?
> 10   A.  I don't recall that, but you might be right about that.
> 11   If you do not do a chemical test, it may not be possible to
> 12   determine the purity.  But based on my own experience -- but
> 13   I can say that, based on my experience, that was cocaine of
> 14   excellent quality, and I could tell that because of its color,
> 15   because it sparkled, and because of its consistency.  Because
> 16   when you put it on your hand and when you rub the cocaine onto
> 17   your hand, then it will release oil.  And when I did that, it
> 18   was pure oil, and so that's why I told Mr. Flores and Francisco
> 19   that the quality of the cocaine was good.

---

[1] "Tr." refers to the Suppression Hearing in this case, held on September 8-9, 2016.

(Tr. 432:6–19 (CS-1)).  As is obvious, the type of testimony proffered by CS-1 here, where he

neither ingested the alleged cocaine nor was the purveyor of the supposed cocaine, veers far

beyond mere lay testimony and ventures into the areas of expert testimony covered by Rule 702.

For these reasons, CS-1's testimony fails each of the four requirements for admissibility

under Rule 702, which indicates:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence or
> to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.  Here, the Government cannot meet its burden of demonstrating that CS-1's

specialized knowledge will help the trier of fact.  CS-1 lied and hid from the Government that he

was a chronic cocaine user until shortly before the suppression hearing.  Moreover, the

Government can point to no credible support for the idea that cocaine can be identified through

touch and the degree to which it "sparkled."  There is no indication that the proffered testimony

of CS-1 is the product of "reliable principles and methods" or that it is based on "sufficient facts

or data."

Indeed, courts have precluded the introduction of testimony regarding the identification

of narcotics under circumstances where the Rule 702 admissibility issues were far less

problematic.  *See, e.g.*, *United States v. Diaz*, No. CR 05-0167 WHA, 2006 WL 3512032 at *16

(N.D. Cal. Dec. 6, 2006) (finding, after six-day *Daubert* hearing, cocaine identification

procedure invalid under *Daubert* where lab conducted complex, scientifically valid,

microcrystalline testing of certain packages but then assumed other packages were also cocaine if they were "similar in appearance," *i.e.* if they passed a visual inspection conducted by qualified personnel). It follows that if a visual inspection was insufficient in *Diaz*—even where trustworthy and competent lab personnel had conducted complex scientific analysis of related packages—a cursory visual inspection by CS-1 is necessarily invalid.

Preclusion is further required because the Government has failed to make any appropriate expert disclosure, and can cite no authority whatsoever supporting the idea that cocaine can be identified with any degree of accuracy through the method described by CS-1. Indeed, commentators have observed that even complex "field tests," which actually assess whether a substance has the general molecular structure of a controlled substance, are likely insufficient to use as a basis for the identification of controlled substances under *Daubert*. *See, e.g.*, Alan Harris, *A Test of a Different Color:  The Limited Value of Presumptive Field Drug Tests and Why that Value Demands Their Exclusion From Trial*, 40 Sw. L. Rev. 531 (2011); *see also* Danae VanSickle Grace, *The Sky Is Not Falling:  How the Anticlimactic Application of Melendez-Diaz v. Massachusetts to Oklahoma's Laboratory Report Procedures Allows Room for Improvement*, 63 Okla. L. Rev. 383, 414 (2011) ("**the accurate visual identification of certain narcotics, like cocaine and heroin, is nearly impossible due to the millions of chemicals that can be made into white powder.** Furthermore, imitation drugs complicate sole reliance on lay testimony and circumstantial evidence because the circumstances surrounding a sale of real drugs are strikingly similar to a sale of imitation drugs.") (emphasis added); Michael D. Blanchard & Gabriel J. Chin, *Identifying the Enemy in the War on Drugs:  A Critique of the Developing Rule Permitting Visual Identification of Indescript White Power in Narcotics Prosecutions*, 47 Am. U. L. Rev. 557, 588–89 (1998).

Blanchard and Chin describe the problems associated with supposed visual identification

of controlled substances as follows:

> Likewise, experienced users of narcotic substances are regularly qualified to give expert testimony as to the identity of a particular substance which they have used.  Courts typically qualify the user as an expert based on prior use of the substance and resultant familiarity with the effects of the substance when ingested.  When a drug user gives expert opinion testimony as to the identity of a substance based on his experience ingesting the particular substance, the drug user infers the identity of the substance based on the effects of the substance when ingested.  Thus, the drug user is properly qualified as an expert on the effects of a particular substance when ingested—not on the chemical composition or appearance of the substance itself.
>
> The cases in which a substance is identified visually or by chemical analysis, however, are distinct from both the cases of expert police identification of controlled substances based on the circumstances surrounding a transaction or arrest, and user identification of a controlled substance based on the effects of that substance when ingested.
> ****
> The unreliability of visual identification of suspected controlled substances means that other requirements of expert opinion testimony are also absent.  For example, this form of testimony, if proffered, would be of little use to the trier of fact as required by the Federal Rule 702.  Under Federal Rule 702, expert testimony is unhelpful to the trier of fact if it is superfluous (nonrelevant) or if it is more likely to impede the jury's judgment than to assist the jury's judgment.  In fact, admitting such testimony more likely may serve the negative purpose of impeding the jury from exercising its independent judgment, because of the credibility a jury will ascribe to a police expert's testimony.
>
> Identification of an unknown substance based on purportedly specialized training is a matter for expert testimony.  Nevertheless, some courts admit this form of testimony as proper lay testimony.  For much the same reasons, lay opinion testimony identifying a suspected controlled substance should be inadmissible as well; there is no rational basis for the testimony and it is not helpful to the trier of fact.  Further, a police officer's visual inspection will not satisfy the personal knowledge requirement implicit in Rule 701.

*Id.* at 591-95.

In sum, because the Government cannot meet its burden of demonstrating that the informant's opinions regarding the powdery white substance are admissible under Rules 701 or 702, the Court should exclude this testimony.

**CONCLUSION**

For all the foregoing reasons, this Court should grant Defendants' Motion *in Limine* No. 2 excluding certain expert testimony of Government witnesses.

Dated: October 20, 2016
New York, New York

Respectfully Submitted,

/s/ Randall W. Jackson
_____

Randall W. Jackson
John T. Zach
Joanna C. Wright
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446–2300
Facsimile:     (212) 446–2350

*Attorneys for Defendant Efrain Antonio Campo Flores*

_____/s/ David M. Rody_____
David M. Rody
Michael D. Mann
Elizabeth A. Espinosa
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839–5300
Facsimile:     (212) 839–5599

*Attorneys for Defendant Franqui Francisco Flores de Freitas*