

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>787 SEVENTH AVENUE<br>NEW YORK, NY 10019<br>+1 212 839 5300<br>+1 212 839 5599 FAX<br><br>drody@sidley.com<br>+1 212 839 5951 | BEIJING        HONG KONG      SAN FRANCISCO<br>BOSTON         HOUSTON        SHANGHAI<br>BRUSSELS       LONDON         SINGAPORE<br>CENTURY CITY   LOS ANGELES    SYDNEY<br>CHICAGO        MUNICH         TOKYO<br>DALLAS         NEW YORK       WASHINGTON, D.C.<br>GENEVA         PALO ALTO<br><br>FOUNDED 1866 |

November 14, 2016

**By ECF and Electronic Mail**

The Honorable Paul A. Crotty
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    <u>United States</u> v. <u>Campo Flores & Flores de Freitas</u>, S5 15 Cr. 765 (PAC)

Dear Judge Crotty:

      Defendants Efrain Antonio Campo Flores and Franqui Francisco Flores de Freitas jointly submit this letter respectfully moving to preclude testimony by cooperating witness Carlos Gonzalez. Until this summer, Gonzalez worked as an employee at the Juan Manuel Galvez International Airport ("RTB") in Roatan, Honduras. **Gonzalez never spoke to, met with, or even knew the names of the Defendants in this case.** Rather, Gonzalez attended a couple of meetings in which a confidential informant, El Sentado, explained an alleged drug importation scheme that "was shipping out of Venezuela," as described to him. (3513-03, at 4). The Government now seeks to introduce Gonzalez's testimony relating to that alleged scheme despite the fact that his knowledge derives almost exclusively from hearsay conversations he had with El Sentado himself, or from another individual, named Roberto de Jesus Soto Garcia, who also learned all of his information from El Sentado. The Government should not be permitted to perform an end run around the Federal Rules of Evidence and the Defendants' Sixth Amendment rights through the introduction of that testimony. Any testimony offered by Gonzalez would be, at best, minimally probative of the factual issues for trial, and any conceivable probative value of the Gonzalez testimony would be substantially outweighed by both the risk of unfair prejudice to the Defendants and of confusing the jury.

      It appears, based on review of 3500 materials provided by the Government, that Gonzalez is a Honduran national who worked as an air traffic controller. He was first interviewed by DEA agents in June 2016—nearly eight months after the Defendants were arrested in Haiti. At that interview, Gonzalez stated that he did not know either of the Defendants and did not know anything about the charges against them.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

ACTIVE 218294062v.1



Hon. Paul A. Crotty
November 14, 2016
Page 2

      Gonzalez was next debriefed by the AUSAs and the DEA agents with respect to this case on August 11, 2016. In that and subsequent proffer sessions, Gonzalez made it clear that his entire purported knowledge of any even arguably relevant facts in this case was derived from conversations he had with El Sentado. According to Gonzalez, in the fall of 2015, El Sentado first sent a message to Soto to come and see him (El Sentado). Gonzalez and Soto then traveled to meet El Sentado and El Sentado explained the "operation" to them, including that it involved individuals from Venezuela, certain flight plans and permits, and the smuggling of cocaine. (*See* 3513-03, at 4). While it is not clear from the 3500 materials, CS-3 also appears to have been at that meeting and contributed numerous hearsay statements to the discussion.[1] No one other than El Sentado—not Gonzalez, not Soto—had any direct knowledge of the details surrounding the supposed transaction. After this initial meeting, Gonzalez met with El Sentado again the next day and Gonzalez, Soto and El Sentado agreed on a price for Gonzalez's and Soto's assistance at the Roatan airport. After that, as the 3500 notes make clear, Gonzalez "did not hear anything more about the load." (*Id*. at 4). Critically, El Sentado was operating as a Government agent during this entire time period (as was CS-3, who also dominated the discussions during this recorded meeting).

      Gonzalez pleaded guilty before this Court on October 5, 2016. Gonzalez's allocution included statements to the effect that he "agreed with some people to transport drugs from Honduras to the United States, including receiving airplanes that were coming with drugs from South America, especially to Honduras, to the island of Roatán, while [he] was working at that airport as an air traffic controller," and that he "was aware that the drugs were heading to the United States." (3513-06, at 14-15).

      In light of the above, it appears that Gonzalez may testify at trial as to certain statements that El Sentado made to him, and he may testify that he entered into, or attempted to enter into, a narcotics importation/distribution conspiracy with El Sentado. Critically, however, any such conspiracy would have simply nothing to do with the question of whether *the Defendants* entered into a conspiracy with each other—which is the conspiracy alleged in the Indictment and at issue in this case. To permit testimony regarding an entirely different conspiracy between Gonzalez and El Sentado—by an alleged "conspirator" who never met the Defendants, of whom the Defendants had no knowledge, and who could not, as a matter of law, form a single "overarching conspiracy" encompassing the Defendants—would be highly prejudicial. The Defendants thus

---

[1] This first meeting appears to be captured in the transcripts marked as Government Exhibits 215-T and 216-T. Neither of the Defendants are present at that meeting and the discussion is overseen by El Sentado and CS-3, both of whom were cooperating at the time. The other two participants were Soto and Gonzalez. Defendant Flores does not even meet Soto until the next day. Thus, the transcripts of these meetings should be excluded because the Government has failed to establish by a preponderance of the evidence that the non-cooperating participants in the conversation (Soto and Gonzalez) are co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E).



Hon. Paul A. Crotty
November 14, 2016
Page 3

respectfully move to preclude Gonzalez's testimony pursuant to Rule 403 of the Federal Rules of Evidence.

In addition, throughout Gonzalez's 3500 material, there are repeated references to the fact that he "believed" loads of narcotics passing through RTB were bound for the United States. (3513-02, at 3, 5). The 3500 material reflects the fact that over the years Gonzalez claims to have assisted numerous planes unload narcotics at RTB, but only as a member of air traffic control. It appears that he in essence was paid for his silence and did not affirmatively participate in the unloading of the narcotics. In short, there is no factual basis in the 3500 material for this conclusion that "drugs were heading to the United States," (3513-06, at 15), other than pure conjecture on the part of Gonzalez. Nonetheless, the Government appears to also be seeking the introduction of that testimony.

**I.      Gonzalez's Testimony Would Have Minimal Probative Value.**

Any testimony by Gonzalez is not probative of the issues in this case: Whether the Defendants agreed to participate in the charged conspiracy. Gonzalez had no contact with the Defendants and was privy to no information whatsoever that goes to their knowledge and intent. At best, his testimony would be minimally probative of the fact that El Sentado set up other individuals, completely unrelated to the Defendants, to await a fictional load of cocaine in Honduras (a load, by the way, that the Government agents overseeing the sting knew was never going to arrive). As noted above, the Government has not made—nor can it make—the necessary showing that there was a single, overarching conspiracy encompassing Gonzalez and the Defendants. The Government *cannot* make such a showing because no overarching conspiracy existed. Gonzalez never met the Defendants, he never communicated with the Defendants in any way, and the Defendants had no knowledge or awareness of Gonzalez, or of any Gonzalez–El Sentado agreements that may have existed. Indeed, it is well established that "the participation of a single common actor in what are allegedly two sets of conspiratorial activities does not establish the existence of a single conspiracy." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (quotation omitted).

At a minimum, the Government should not be permitted to place such statements before the jury until after it has established that those statements are admissible against the Defendants pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See, e.g.*, *Badalamenti v. United States*, No. 92 CR. 374 JFK, 1997 WL 107461, at *5 (S.D.N.Y. Mar. 10, 1997) ("Under Fed. R. Evid. 801(d)(2)(E), 'a statement [made] by a coconspirator of a party during the course and in furtherance of the conspiracy' is admissible against that party. In order to admit the statements against [the defendant] under this rule, the Court was first required to determine by a preponderance of the evidence that the declarant and the party against whom the testimony was offered were involved in a conspiracy together.") (citing *Bourjaily v. United States*, 483 U.S.



Hon. Paul A. Crotty
November 14, 2016
Page 4


171, 175 (1987)) (emphasis added).  In *United States v. Saneaux*, 365 F. Supp. 2d 493, 504 n.10 (S.D.N.Y. 2005), for example, the court properly directed that at trial, the government first had "to elicit and place before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility, including the 'in furtherance' requirement, so that [the court could] hear counsel argue the issue and rule upon the admissibility of the [co-conspirator statements] *before those declarations are placed before the jury*." *Id*. at 504 n.10 (emphasis added).  The alternative—having Gonzalez testify as to supposed statements made by the Defendants, in the absence of sufficient evidence to satisfy the prerequisites of the co-conspirator exception—would risk a mistrial, particularly in light of the highly prejudicial nature of those statements.

It is also critical that El Sentado was acting as a government agent and not a true co-conspirator.  *See Florez v. United States*, No. 07-CV-4965 (CPS), 2009 WL 2228121, at *19 (E.D.N.Y. July 24, 2009) ("[A]n agreement between only two actors, one of whom is a government agent, cannot constitute a conspiracy.  A coconspirator-turned-criminal informant qualifies as a government agent.") (citing *United States v. Miranda–Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991)); *accord United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997) (stating that no conspiracy could have existed among one alleged conspirator, a government agent and a government informant).  Because, as a matter of law, there can be no conspiracy between El Sentado and Gonzalez, a statement by El Sentado could not truly be "in furtherance of the conspiracy."

Nor would Gonzalez's testimony be relevant to the mens rea of the Defendants.  Conspiracy, of course, is a specific intent crime, and the mens rea that the jury will be called upon to find is personal to each defendant and subjective.  *See United States v. Gigante*, 982 F. Supp. 140, 169 (E.D.N.Y. 1997), *aff'd*, 166 F.3d 75 (2d Cir. 1999) ("[t]he factor of intent in conspiracy is complicated by the fact that the criminal 'act' is an agreement, which is itself subjective and involves as an essential element an intent to agree") (quoting Note, *The Conspiracy Dilemma:  Prosecution of Group Crime or Protection of Individual Defendants*, 62 HARV. L. REV. 276, 280 (1948)).  Consequently, testimony as to the mens rea of others, such as Gonzalez, is irrelevant.  *See, e.g.*, *United States v. Schaller*, 401 F. App'x 419, 422 (11th Cir. 2010) (per curiam) ("what other people know about the . . . plan has no bearing on [defendant's] own personal knowledge and intent.").  The separate discussions of Gonzalez and Soto to one another are not probative at all of the Defendants' knowledge and intent to participate in the charged conspiracy.

In sum, Gonzalez's testimony simply would not be probative of the issues for trial in this case.



Hon. Paul A. Crotty
November 14, 2016
Page 5


**II.     The Testimony Would Unfairly Prejudice The Defendants and Confuse The Jury.**

The Gonzalez testimony would, on the other hand, pose a very significant risk of unfair prejudice and juror confusion.

On this issue, *United States v. Wassner*, 141 F.R.D. 399 (S.D.N.Y. 1992), is instructive. In *Wassner*—as here, a conspiracy case—the court described the evidence that the government sought to introduce in the following terms:

> [T]he government seeks to put before the jury proof that Gurary and the Sternbergs were criminals and that others who dealt with them were criminals. From this evidence, the government would ask the jury to infer that the [defendants] must be criminals since they associated with people who, in turn, associated with Gurary and the Sternbergs.

*Id*. at 404. The *Wassner* court properly concluded that Rule 403 barred the introduction of this evidence, because "[t]he evidence which the government seeks to introduce here would only constitute proof of the *other* spokes in the wheel." *Id*. at 405. The court further reasoned that "[t]he jury in this case will be called upon to determine whether the Wassners are guilty of conspiring with Gurary and the Sternbergs, *not* whether Gurary and the Sternbergs conspired with others" and that such "[g]uilt by association is just what Fed. R. Evid. 403 was intended to exclude." *Id*. at 405 (emphasis added). So too here.

In addition, references to a wholly different conspiracy would pose a significant risk of confusion and generally would cause the jury to focus on alleged criminal activity that is not relevant to the essential factual questions at issue in the trial. *See, e.g.*, *United States v. Coward*, 630 F.2d 229, 230-31 (4th Cir. 1980) (reversing where "[t]he evidence at trial showed unrelated conspiracies" in light of spillover prejudice; although trial court "did everything possible to assure that the jury only considered the appropriate evidence against each defendant[,] "[t]his proved to be an impossible chore . . . due both to the subtleties of the evidence and to its emanation from common sources."). None of Gonzalez's testimony would be relevant to any actual issue in this trial. At best, it shows that El Sentado—who was a Government informant—was able to convince two individuals—Gonzalez and Soto—to assist with phantom logistics in Honduras as part of the sting operation. Neither of those individuals had any contact with the Defendants outside of an already videotaped meeting that only Soto (and not Gonzalez) attended. The Government already has a witness set to testify at trial who actually attended and videotaped that meeting—CS-3. Gonzalez's testimony adds nothing to that recorded meeting and instead simply marshals inadmissible hearsay testimony into evidence. Not only is this inappropriate, it



Hon. Paul A. Crotty
November 14, 2016
Page 6

is also a complete waste of time and distraction to the jury because it has zero probative value as to what is at issue in this case, namely the Defendants' knowledge and intent.

"Rule 403 is essentially a rule of fairness. It is fair to require the government to prove its conspiracy and substantive charges against [the Defendants] on the basis of their own acts, and not the acts of others. It would be unfair to require [the Defendants] to explain and defend not only their own acts, but the acts of others, such as [Gonzalez and El Sentado]." *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 954 (S.D.N.Y. 1989); *see also id.* (concluding that the Defendants "would be unfairly prejudiced by evidence of the wrongful acts of others, acts they did not themselves control.").

Likewise, any testimony from Gonzalez relating to his "belief" that narcotics routinely travel from the RTB to the United States has no probative value and is highly prejudicial. (3513-02, at 3, 5). As discussed above, Gonzalez has no factual basis for that assertion other than hearsay and conjecture. And, in any event, such testimony would amount to a lay opinion that would be duplicative of the Government's already admitted expert testimony by Special Agent Mahoney relating to international narcotics trafficking routes.

### III. The Introduction of El Sentado's Statements Would Also Violate The Defendants' Rights Under The Confrontation Clause.

The introduction of the statements of El Sentado discussed above would also violate the Defendants' rights under the Confrontation Clause, which provides an independent basis for excluding this testimony. Under *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny, a statement is "testimonial" and thus subject to the protections of the Confrontation Clause, if, *inter alia*, it is a "statement[] that [a] declarant[] would reasonably expect to be used prosecutorially," *Crawford*, 541 U.S. at 51, or where the purpose of a statement is "to create a record for trial." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). Here, El Sentado, as a cooperating witness, surely acted with the purpose and the expectation that his statements would be later used at trial; consequently, those statements should be deemed testimonial. *See, e.g., United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004) ("*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial."); *cf. United States v. Cromer*, 389 F.3d 662, 670-71 (6th Cir. 2004) ("In light of *Crawford* . . . the Court holds that statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant.").

\*\*\*



Hon. Paul A. Crotty
November 14, 2016
Page 7


In light of the above considerations, the Defendants respectfully request that Gonzalez be precluded from testifying.

                                                  Respectfully submitted,

| /s/ Randall W. Jackson | /s/ David M. Rody |
|---|---|
| Randall W. Jackson | David M. Rody |
| John T. Zach | Michael D. Mann |
| Joanna Wright | Elizabeth Espinosa |
| Boies, Schiller & Flexner LLP | Sidley Austin LLP |

cc:    AUSA Emil Bove
        AUSA Brendan Quigley